**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

DISABILITY RIGHTS NEW YORK,

Case No.: _____
ECF Case

Plaintiffs,

**COMPLAINT AND**
**JURY DEMAND**

-against-

NEW YORK STATE; ANDREW M. CUOMO in
his official capacity as the Governor of New York State;
THE OFFICE FOR PEOPLE WITH DEVELOPMENTAL
DISABILITIES; and KERRY A. DELANEY in her official
capacity as Acting Commissioner of the New York State
Office for People with Developmental Disabilities,

Defendants.

## PRELIMINARY STATEMENT

1.      Disability Rights New York (DRNY) brings this complaint for declaratory and

injunctive relief to challenge the acts and omissions of New York State, Andrew M. Cuomo in

his official capacity as the Governor of New York State, the Office for People with

Developmental Disabilities (OPWDD), and Kerry A. Delaney in her official capacity as Acting

Commissioner of the Office for People with Developmental Disabilities (collectively

"Defendants") for unnecessary institutionalization of adults with disabilities in residential

educational programs after they complete their education.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant 28

U.S.C. Sections 1331 and 1343(a)(3), as this action arises under, and seeks redress for, the

1

deprivation of rights secured by the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973 (Section 504). 42 U.S.C.A. § 12132; 29 U.S.C. § 794.

3.    Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because Defendants are doing business and/or are residents of this Judicial District.

## PARTIES

### Plaintiffs

4.    DISABILITY ADVOCATES, INC. is an independent non-profit corporation organized under the laws of the State of New York. It does business and has sued under the name DISABILITY RIGHTS NEW YORK (DRNY).

5.    Under the Developmental Disabilities Assistance and Bill of Rights Act (DD Act), Congress gives significant federal funding to states for services to individuals with disabilities provided the state establishes a Protection and Advocacy (P&A) system that meets certain specified conditions. 42 U.S.C. § 15041 et seq.

6.    DRNY is New York State's P&A system.  N.Y. Exec. Law § 558(b).

7.    DRNY is specifically authorized to pursue legal, administrative and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of individuals with disabilities.  42 U.S.C. § 15043(a) (2)(A) (i).

8.    DRNY has offices in the State of New York located at 25 Chapel Street, Suite 1005, Brooklyn, NY 11201, 725 Broadway, Suite 450, Albany, NY 12208; and 44 Exchange Blvd., Suite 110, Rochester, NY 14614.

### Defendants

9.    New York State is a public entity as defined by 42 U.S.C § 12131(1)(A).

10.    New York State operates OPWDD.

11.    New York State is a recipient of federal funds.

12.    Defendant Governor Andrew M. Cuomo is the governor of the State of New York, and is responsible for ensuring that New York operates its services, programs, and activities in conformity with Mental Hygiene Law § 13.09, Title II of the ADA, Section 504.

13.    Governor Cuomo is responsible for the executive branch of New York State government which includes OPWDD.

14.    Governor Andrew M. Cuomo is vested with the power to appoint subordinates and employees as necessary for the exercise of his powers as the head of the Executive Department including appointing the Acting Commissioner of OPWDD. *See,* Executive Law § 30.

15.    During Governor Cuomo's tenure, OPWDD has taken, and continues to take, action that Plaintiff complains of in this lawsuit.

16.    Governor Cuomo conducts business in Brooklyn, New York, and maintains an office at 633 Third Avenue, 38th Floor, New York, New York 10017.

17.    Governor Cuomo is sued in his official capacity.

18.    OPWDD is an agency of the State of New York.

19.    OPWDD is a public entity as defined by 42 U.S.C. § 1231(1)(B).

20.    The OPWDD has all powers and duties set forth in Mental Hygiene Law § 13.09 and as otherwise prescribed by law, statute, rules and regulations.

21.    OPWDD is a recipient of federal funds.

22.    OPWDD maintains offices at 888 Fountain Avenue, Brooklyn, New York 11239.

23.     Defendant Kerry A. Delaney is the Acting Commissioner of OPWDD, with all powers and duties set forth in Mental Hygiene Law § 13.09 and otherwise prescribed by law, statutes, rules and regulations.

24.     Acting Commissioner Delaney is responsible for the operation and administration of OPWDD, including its planning, programs and services for individuals with disabilities in New York.

25.     Defendant Acting Commissioner Delaney is sued in her official capacity.

26.     While under Acting Commissioner Delaney's control, OPWDD has taken, and continues to take, action that Plaintiff complains of in this lawsuit.

27.     Acting Commissioner Delaney maintains an office at 44 Holland Avenue, Albany, New York 12229.

## FACTUAL ALLEGATIONS

28.     In New York State, children with disabilities are placed in residential schools when a Committee on Special Education determines that a student cannot be appropriately educated in their home school district, a board of cooperative educational services program, or a private day educational program due to the complexity of the child's disability.

29.     New York State operates, licenses, or certifies residential schools within New York State and outside of New York State.

30.     Residential schools are defined by the Centers for Medicare and Medicaid Services as institutional settings.

31.     The New York State Education Department has currently approved 88 in-state and out-of-state residential schools for students with disabilities pursuant to N.Y. Comp. Codes R. & Regs. tit. 8, § 200.7 (2016).

32.     Students with disabilities are eligible to receive educational services at residential schools until they graduate with a high school diploma or reach the age of 21.

33.     After the age of 21, all students with disabilities at residential schools must be discharged from these institutional settings.

34.     Under Mental Hygiene Law § 13.38(b), OPWDD shall "develop a plan and implement procedures to help ensure that all persons [over the age of 21 that continue to reside at residential schools] receive assistance in locating appropriate and available placements within the adult care system[]." *Id.*

35.     At least 97 individuals in residential schools have reached the age of 21 and qualify for OPWDD services (hereinafter "Adults Awaiting Discharge").

36.     Adults Awaiting Discharge are people with physical or mental impairments that substantially limit a major life function.

37.     Adults Awaiting Discharge are ready for discharge because they have reached the age of 21.

38.     OPWDD has developed discharge plans which state that 92 of the 97 Adults Awaiting Discharge are ready for discharge into a community setting.

39.     All 92 Adults Awaiting Discharge remain institutionalized in residential schools after at least one (1) year of completing their education.

40.     The remaining five (5) Adults Awaiting Discharge lack a discharge plan, but are eligible for OPWDD community based services.

41.     OPWDD has determined that these five (5) Adults Awaiting Discharge are ready for discharge to the community.

42.    Defendants have failed to implement discharge plans for at least 97 Adults Awaiting Discharge in residential schools at a reasonable pace.

43.    OPWDD has a practice of starting discharge planning for students at residential schools at age 19 or older.

44.    Beginning discharge planning at age 19 is an inadequate amount of time to effectuate a discharge plan that will enable individuals to be discharged when completing their education at the age of 21.

45.    Indeed, 97 Adults Awaiting Discharge remain in these institutional settings a year or more after completing their education.

46.    The 97 Adults Awaiting Discharge do not oppose discharge to community-based services.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF TITLE II OF THE ADA

PLAINTIFFS REPEAT AND RE-ALLEGE THE ABOVE PARAGRAPHS.

47.    This claim is brought against all Defendants.

48.    Title II of the ADA requires a public entity to administer its services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.  28 C.F.R. § 35.130(d).

49.    Under the ADA, a qualified individual with a disability may not be subjected to discrimination for reason of their disability by any state entity or program receiving federal support. 42 U.S.C.A. § 12132.

50.    Discrimination includes unnecessary segregation of persons with disabilities in privately owned facilities. *See,* 28 C.F.R. § 35.130(b).

6

51.    A disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).

52.    The definition of disability must be construed in favor of broad coverage of individuals under the ADA. 42 U.S.C. § 12102(4)(A).

53.    The Adults Awaiting Discharge are individuals with disabilities that substantially limit one or more major life activity.

54.    The Adults Awaiting Discharge in residential schools have disabilities within the meaning of 42 U.S.C. § 12131(2).

55.    The Adults Awaiting Discharge in residential schools are qualified to participate in more integrated settings appropriate for their needs.

56.    The Adults Awaiting Discharge in residential schools are ready for discharge to the community with supports and services from OPWDD.

57.    The Adults Awaiting Discharge in residential schools are appropriate for community based services and supports from OPWDD.

58.    The Adults Awaiting Discharge in residential schools do not oppose community based supports and services.

59.    The unnecessary institutionalization and segregation of the Adults Awaiting Discharge in residential schools is unlawful discrimination under Title II of the ADA.

60.    Defendants can reasonably accommodate the Adults Awaiting Discharge in residential schools by providing them with community-based services in the most integrated setting appropriate for their needs.

61.    Defendants can reasonably accommodate the Adults Awaiting Discharge in residential schools without any fundamental alteration to New York State's system and services.

## SECOND CLAIM FOR RELIEF

**VIOLATION OF TITLE II'S REASONABLE MODIFICATION MANDATE**

62.     Plaintiffs repeat and re-allege the above paragraphs.

63.     This claim is brought against all Defendants.

64.     A public entity must reasonably modify its polices, practices, or procedures to avoid discrimination in violation of the ADA.

65.     Discrimination includes unnecessary segregation of persons with disabilities in privately owned facilities.  28 C.F.R. § 35.130(b).

66.     OPWDD permits the unnecessary institutionalization of all Adults Awaiting Discharge in residential schools while they await discharge to the community.

67.     OPWDD funds the segregation of Adults Awaiting Discharge in residential schools. Mental Hygiene Law § 13.38(b).

68.     OPWDD's practice of beginning discharge planning at age 19 for youth in residential schools with disabilities does not afford enough time to effectuate a discharge plan when these individuals complete their education at age 21.

69.     Consequently, Defendants unnecessarily segregate Adults Awaiting Discharge at residential schools.

70.     OPWDD failed to reasonably modify its discharge planning process to allow Adults Awaiting Discharge access to community services.

71.     One possible reasonable modification would be for OPWDD to begin the discharge planning for eligible residential school students at age 16.

72.     This accommodation would not require a fundamental alteration to New York State's system and services.

73.     Defendant OPWDD is a public entity covered by Title II of the ADA.  42 U.S.C. §§ 12131(1)(A) and (B).

74.     Defendants Acting Commissioner Delaney and Governor Cuomo are responsible for the operation of public entities covered by Title II of the ADA.

75.     Defendants have discriminated against Adults Awaiting Discharge by failing to make reasonable modifications to policies that force individuals to live in institutional settings, rather than the most integrated setting appropriate for their needs.

**THIRD CLAIM FOR RELIEF**

**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973**

76.     Plaintiffs repeat and re-allege the above paragraphs.

77.     This allegation is brought against all Defendants.

78.     Section 504 provides:

"No otherwise qualified individual with a disability in the United States . . . shall solely by reason of her or his disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

29 U.S.C. § 794.

79.     Section 504 further provides that a:

"recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration: (i) That have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap; [or] (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons . . . ."

45 C.F.R. § 84.4(b)(4).

80.     Defendants are obligated under Section 504 to administer New York State programs and to utilize methods of administration in a manner that supports the availability of services and programs in the most integrated setting for individuals with disabilities.

9

81.     Defendants have failed to meet these obligations.

82.     The Adults Awaiting Discharge are individuals with disabilities that substantially limit one or more major life activity.

83.     Therefore, the Adults Awaiting Discharge are qualified individuals with disabilities within the meaning of 29 U.S.C. § 705(20).

84.     The Adults Awaiting Discharge are qualified to participate in more integrated settings appropriate for their needs.

85.     Defendants can reasonably accommodate the Adults Awaiting Discharge in the most integrated settings appropriate for their needs.

86.     Defendants are recipients of federal financial assistance.

87.     Defendants Acting Commissioner Delaney and Governor Cuomo are responsible for the operation of public entities receiving federal assistance.

88.     Defendants have discriminated against the Adults Awaiting Discharge by forcing them to live in these institutional settings, rather than the most integrated setting appropriate for their needs.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff respectfully request that this Court grant the following relief against defendants including:

1)     Entering a declaratory judgement, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that:

      a.     Defendants have violated the ADA by discriminating against Adults Awaiting Discharge through their unnecessary institutionalization depriving them of their personal liberty.

b. Defendants have violated Section 504 by discriminating against Adults Awaiting Discharge through their unnecessary institutionalization.

2) Injunctive relief requiring Defendants to:

a. Take immediate steps to develop and implement discharge plans for the Adults Awaiting Discharge so they are given the opportunity to live and receive services in the most integrated setting appropriate to their needs;

3) Injunctive relief requiring Defendant OPWDD to:

a. Begin the discharge planning process for students at residential schools that are eligible for OPWDD services at age sixteen, or as soon as they become eligible for OPWDD services if they obtain OPWDD eligibility at age sixteen or older;

b. Involve young adults with disabilities at residential educational programs in their discharge planning process;

5) Awarding reasonable costs and attorney's fees pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794(a)(1); and

6) Such other relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the federal rules of civil procedure, DRNY demands trial by jury on all issues so triable.

DATED:        November 30, 2017

Respectfully submitted,

Michael I. Fiske, Esq.
Bar Code No. MF9552

Julie Michaels Keegan, Esq.
Bar Code No. JK7568

Lara H. Weissman, Esq.
Bar Code No. LW6214

725 Broadway, Suite 450
Albany, New York 12207
(518) 432-7861 (telephone)
(518) 427-6561 (fax) (not for service)

12