

**New York's Protection & Advocacy System and Client Assistance Program**

*By ECF*  March 2, 2018

The Honorable Roslynn R. Mauskopf
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: **Disability Rights New York v. New York State, et al.**
     **USDC EDNY Civil Action No. 17 CV 6965 (RRM) (SJB)**

Dear Judge Mauskopf:

On November 30, 2017, Plaintiff Disability Rights New York ("DRNY") commenced litigation ("Complaint") against the State of New York, Governor Andrew Cuomo, New York State's Office for People with Developmental Disabilities ("OPWDD") and its Acting Commissioner, Kerry A. Delaney (collectively, "Defendants") for their violations of Title II of the Americans with Disabilities Act ("Title II") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), causing the unnecessary institutionalization of adults with disabilities in residential schools who have completed their education ("Adults Awaiting Discharge").

On February 15, 2018, Defendants filed a pre-motion letter to dismiss the Complaint. We submit this response in accordance with the Court's February 16, 2018 order.

### I. Disability Rights New York has Standing to Pursue this Action

#### A. DRNY has Standing to Pursue this Action

DRNY is the designated federal Protection & Advocacy ("P&A") System for New York State. N.Y. Exec. § 558(b).  As New York's P&A System, DRNY administers a federal grant through the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"). The DD Act grants authority to DRNY to "pursue . . . legal . . . remedies to ensure the protection of individuals" with disabilities. 42 U.S.C.A. § 15043(a)(2)(A).  DRNY is authorized to bring lawsuits, in its own right to protect individuals with disabilities, in this case, Adults Awaiting Discharge. Defendant's reliance on DAI v. New York Coalition, 675 F.3d 149, 157 (2d Cir. 2012), is misplaced, as the Court held that only a P & A System contractor lacked standing. Id., 157-58. DRNY is not a P &A contractor, but is the P &A System for New York State.  N.Y. Exec. § 558(b).

#### B. The Complaint Sufficiently Pleads a Factual Basis to Establish Standing

DRNY's Complaint meets all the requirements set forth in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). Id. at 560–61.  Under Lujan, DRNY must demonstrate: (1) a "concrete and particularized," "actual or imminent" injury in fact (2) a causal connection between Defendants

conduct to the alleged injury and (3) a likelihood that a favorable decision would redress said alleged injury. Id.  The requirements of justiciability and controversy are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Id.

The Complaint states that at least 97 Adults Awaiting Discharge have been injured through Defendants' discrimination by being institutionalized and denied community integration. Compl. ¶ 45. This institutionalization is the result of Defendants' failure to integrate the Adults Awaiting Discharge into the community when they age out of school services at age 21, as required by Mental Hygiene Law § 13.38. Compl. ¶ 34. DRNY's requested relief requires Defendants to take immediate steps to stop their discriminatory practices.  Thus, the Complaint alleges actual injuries traceable to Defendants' alleged conduct.  The relief sought would redress said injuries.

Further, the 97 Adults Awaiting Discharge are not simply members of the general public who have been aggrieved, but members of a specific group—i.e.—individuals with disabilities wrongly residing in institutional settings. The likelihood of suffering from the challenged action is not speculative but imminent and ongoing. These 97 Adults Awaiting Discharge, and future individuals, will continue to suffer directly from the identified harm if Defendants' actions continue.   Therefore, the Complaint properly alleges an identifiable and imminent ongoing harm.  This injury in fact is a direct result of Defendants' federal violations.  Article III concerns therefore do not apply.

## II.     The Complaint Alleges Sufficient Facts to State a Claim

To establish a prima facie violation of the ADA or the Rehabilitation Act, a plaintiff must establish: (1) a qualified disability; (2) defendants are an entity subject to the ADA and the Rehabilitation Act; and (3) denial of an opportunity to participate in, or benefit from, defendants' services, programs, or activities. 42 U.S.C. § 12131(2); 42 U.S.C. § 12131(1); 42 U.S.C. § 12132. DRNY has met all these requirements.[1]

The names of the 97 Adults Awaiting Discharge referenced are not required.  Such information can and will be produced during discovery and is, in fact, already in Defendants' possession. Defendants maintain an accounting of the individuals to whom they are required to provide services, inclusive of the 97 individuals.  Indeed, DRNY obtained the identity of the 97 individuals from the Defendant OPWDD pursuant to DRNY's statutory authority.

The Complaint alleges that the 97 Adults Awaiting Discharge are individuals with physical or mental disabilities that substantially limit a major life function. Compl. ¶ 35. The Adults Awaiting Discharge are qualified for OPWDD services and are OPWDD eligible. Compl. ¶¶ 36, 40.  Any individual who is OPWDD eligible is also qualified under Title II and Section 504 because

---

[1] Defendants apparently do not dispute that DRNY has properly alleged the second element of an ADA or Section 504 violation that Defendants are subject these statutes. Defendants further do not dispute that DRNY has properly alleged its Second Count that Defendants have violated Title II's Reasonable Modification Mandate.

OPWDD eligibility requires the same, and even stricter, criterion for qualification. MHL § 1.03(22), *c.f.* 42 U.S.C. 12102. The disabilities of the Adults Awaiting Discharge require OPWDD services due to the impact that their disability has on major life activities such as self-care and learning. Compl. ¶28. Functional deficits in major life activities is a requirement for OPWDD services, for which these individuals have been found eligible. MHL § 1.03(22); Compl. ¶ 36.

The Complaint further alleges that the Adults Awaiting Discharge have been excluded from OPWDD services. Compl. ¶¶ 39, 40, 45. OPWDD administers community based services and residences for which OPWDD has determined the Adults Awaiting Discharge are eligible. Compl. ¶ 35. OPWDD has failed to timely transition these individuals to said services and residences, causing unlawful institutionalization and exclusion. Compl. ¶ 42. Likewise, DRNY has adequately stated a claim against remaining Defendants, as Governor Cuomo and Commissioner Delaney are responsible for ensuring that programs for people with disabilities conform to the legal requirements of the ADA and Section 504. Compl. ¶¶ 12; 24. Defendants' assertion therefore fails.

### III.     Defendants are not entitled to Sovereign Immunity

It is well settled that Congress fully intended to abrogate state sovereign immunity for claims relating to the Americans with Disabilities Act and Section 504. See e.g., Tennessee v. Lane, 541 U.S. 509 (2004). Further, *Ex Parte Young,* and its progeny, established that there is no Eleventh Amendment shield protecting state officials, sued in their official capacities so long as the relief sought is to stop present or future wrongs and is prospective. *Ex Parte Young*, 209 U.S. 123 (1908). Because DRNY's requested relief is prospective, a sovereign immunity defense as to Governor Cuomo cannot stand. Id. Therefore, Defendants allegation that Plaintiff is precluded from bringing its Title II and Section 504 claims against the State, OPWDD and Governor Cuomo under the Eleventh Amendment doctrine of sovereign immunity must be rejected.

Defendants' arguments cannot stand.

    Respectfully submitted,
    /s/
    Michael I. Fiske, Esq.
    Lara H. Weissman, Esq.
    *Attorneys for Plaintiff*
    Disability Rights New York
    25 Chapel Street, Suite 1005
    Brooklyn, New York 11201

cc: James Mirro, Esq.