UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
DISABILITY RIGHTS NEW YORK;
REGINALD RIVERS, JR., by his Next
Friend, Reginald Rivers, Sr.; SHARID
FOOTMAN, by his Next Friend,
Shaleema McCree; and KATARINA
SCHOLZ, by her Next Friend, Paul
Scholz,

                    Plaintiffs,

     -against-

NEW YORK STATE; KATHLEEN
HOCHUL in her official capacity as the
Governor of New York State; THE
OFFICE FOR PEOPLE WITH
DEVEOPMENTAL DISABILITIES;
and WILLOW BAER, in her official
capacity as Acting Commissioner of the
New York State Office for People with
Developmental Disabilities,

                    Defendants.

------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 17-CV-6965-FB-MMH

*Appearances:*
*For the Plaintiffs:*
ERIN G. MCGUINNESS
Disability Rights New York
25 Chapel Street, Suite 1005
Brooklyn, New York 11201

*For the Defendants:*
JAMES MIRRO
Assistant Attorney General
State of New York
28 Liberty Street, 17th Floor
New York, New York 10005

**BLOCK, Senior District Judge:**

     In this action under the Americans with Disabilities Act ("ADA") and section

504 of the Rehabilitation Act of 1973 ("Section 504"), plaintiffs' counsel seek leave to amend the complaint to replace three individuals currently named as plaintiffs with four new individuals.   For the following reasons, the motion is granted.

## I

New York State places children with particularly complex developmental disabilities in "residential schools."   Under state law, such individuals must be discharged from those institutions when they reach the age of 21.   *See* N.Y. Educ. L. § 4401(1).   In the meantime, they are entitled to assistance "in locating appropriate and available placements within the adult care system[]."   N.Y. Mental Hygiene L. § 13.38(b).   The Court will refer to such placements as "non-school placements."

Since 2013, Disability Rights New York ("DRNY") has administered New York State's protection and advocacy ("P&A") system, which oversees the state's "system of care for individuals with disabilities."   N.Y. Exec. L. § 558(b)(i). Federal law provides significant financial incentives for states to empower entities like DRNY to, among other things, "pursue legal, administrative, and other appropriate remedies . . . to ensure the protection of, and advocacy for, the rights of such individuals within the State."   42 U.S.C. § 15043(a)(2)(A)(i).   New York has granted DRNY that authority.   *See* N.Y. Exec. L. § 558(b)(ii)(B).

DRNY estimates that there are currently 200 individuals being involuntarily

kept at residential schools well past the age of 21.   It claims that New York State has failed to timely create and implement discharge plans for those individuals, and that the delay violates the ADA and Section 504, as interpreted in *Olmstead v. L.C.*, 527 U.S. 581 (1999).

DRNY filed suit against New York State, its Governor, its Office of People with Developmental Disabilities ("OPWDD"), and OPWDD's Acting Commissioner in 2017.   It initially sued on the theory that its statutory mandate gave it standing to sue in its own name.   In an abundance of caution, it later filed an amended complaint adding Evan Thomas, a 22-year-old still living at a residential school, as a plaintiff.

The defendants moved to dismiss for lack of standing and failure to state a claim.   On June 14, 2019, then-Magistrate Judge Bulsara issued a report and recommendation ("R&R") recommending that DRNY be dismissed for lack of standing.   He reasoned that DRNY had not alleged facts sufficient to overcome the prudential—that is, not constitutionally mandated—rule that "a litigant 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"   R&R at 9 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).   He acknowledged the doctrine of "associational standing" articulated in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1997), but noted that DRNY had "disclaimed any reliance on

3

association standing." R&R at 10 (citing Pls'. Mem. of Law at 9-10). He understood DRNY as instead relying on a different strain of "representational standing" based on its congressionally-sanctioned authority to sue on behalf of individuals with disabilities. He rejected that theory as not supported by the allegations of the complaint, *see id.* at 20, and, in any event, not embraced by any court, *see id.* at 22-23 ("[T]he Supreme Court has previously suggested that the third-party bar is a question of statutory authorization. . . . But at this point, the bar to third-party standing remains.").

Turning to the individual plaintiff, Magistrate Judge Bulsara concluded that Thomas had standing and stated plausible claims for relief. He further concluded, however, that OPWDD was the only proper defendant for those claims.

DRNY objected to the R&R, challenging only Magistrate Judge Bulsara's conclusion that it lacked standing. It confirmed that it was not invoking associational standing in this case, although it reserved the right to do so in other cases. It argued instead that its specific congressional authorization to sue on behalf of others overcame the usual bar on third-party standing. The defendants did not object to Magistrate Judge Bulsara's recommendation that their motion to dismiss be denied as to Thomas.

However, while the parties attempted mediation (which ultimately proved unsuccessful), Thomas received a non-school placement. Magistrate Judge

4

Bulsara granted the plaintiffs leave to file a second amended complaint replacing Thomas with three other individual plaintiffs—Reginald Rivers, Jr., Sharid Footman, and Katarina Scholz.   However, non-school placements eventually led to the voluntary dismissal of Rivers's and Footman's claims.

The sole remaining individual plaintiff, Scholz, then moved to represent a class of all individuals still living in residential schools at least one year after becoming eligible for non-school placements.   When Scholz herself received such a placement in January 2023, the defendants requested a premotion conference to address an anticipated motion for summary judgment based on mootness.   In response, Judge Mauskopf ordered the parties to propose a briefing schedule for the motion.   "In the alternative," she said, "plaintiffs may seek leave to amend the complaint to substitute a new named plaintiff for Scholz or the parties may stipulate to the substitution."   Elec. Order (June 27, 2023).   In addition, she denied the motion for class certification "with leave to renew following the Court's ruling on DRNY's objection to Magistrate Judge Bulsara's R&R and defendants' motion for summary judgment or plaintiffs' motion to amend the complaint."   *Id.*

The defendants declined to stipulate to a substitution of plaintiffs. Accordingly, a fully-briefed motion for leave to amend was filed on October 30, 2023.   The proposed third amended complaint names (by their initials) four individuals still living at residential schools between one and five years after

5

becoming eligible for non-school placements.    They seek, for themselves and a class of similarly situated individuals, a declaration that the defendants have violated the ADA and Section 504; an injunction requiring the defendants to promptly create and implement discharge plans for those eligible to receive non-school placements; and attorneys' fees and costs.    They further seek compensatory damages for themselves.    The proposed complaint retains DRNY as a plaintiff and New York State, Governor Kathleen Hochul, and OPWDD's Acting Commissioner, Willow Baer, as defendants.

On January 2, 2024, Judge Mauskopf adopted Magistrate Judge Bulsara's 2019 R&R to the extent that it recommended dismissing DRNY for lack of standing. She did not address the unobjected-to recommendations regarding the defendants' motion to dismiss because those recommendations "relate to plaintiff Thomas, who is no longer a party to this case."    Mem. & Order (Jan. 2, 2024), at 6 n.3.

The case was subsequently reassigned.    Thus, it falls to the undersigned to address the motion for leave to file a third amended complaint.

## II

"It is within the sound discretion of the district court to grant or deny leave to amend."    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).    Nevertheless, Federal Rule of Civil Procedure 15(a)(2) states that a district court "should freely give leave when justice so requires."    "Although Rule

21, and not Rule 15(a), normally governs the addition of new parties to an action,
the same standard of liberality applies under either Rule." *Wood v. Mike
Bloomberg 2020, Inc.*, 343 F.R.D. 470, 473 (S.D.N.Y. 2023) (internal quotation
marks omitted).

"The rule in this Circuit has been to allow a party to amend its pleadings in
the absence of a showing by the nonmovant of prejudice or bad faith." *AEP
Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir.
2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).
"Amendment may be prejudicial when, among other things, it would 'require the
opponent to expend significant additional resources to conduct discovery and
prepare for trial' or 'significantly delay the resolution of the dispute.'" *Id.* at 725-
26 (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.
1981)).

Futility is also a valid reason for denying leave to amend. *See id.* at 725.
"Mere delay, however, absent a showing of bad faith or undue prejudice, does not
provide a basis for a district court to deny the right to amend." *State Teachers
Ret. Bd.*, 654 F.2d at 856.

## A.    Futility: Subject-Matter Jurisdiction

Although DRNY has not sought reconsideration of Judge Mauskopf's ruling
on its standing—and the Court declines to reconsider it *sua sponte*—a brief

7

overview of the issue is called for.   Like any party, DRNY must satisfy "the irreducible constitutional minimum of standing": (1) injury-in-fact, (2) causation, and (3) redressability.   *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992). As Magistrate Judge Bulsara recognized, it must also demonstrate that it falls within an exception to the non-constitutional rule that a party cannot invoke the rights of third parties.   *See Warth*, 422 U.S. at 499.   One such exception is the doctrine of "associational standing," under which "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."   *Hunt*, 432 U.S. at 343.

Although there is no dispute that disabled individuals would have standing to invoke their rights to timely non-school placements, the defendants question whether such individuals are "members" of DRNY.   In *Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149 (2d Cir. 2013), the Second Circuit held that DRNY (then known as Disability Advocates, Inc.) could not invoke associational standing because it was "not a P&A *system* but a *contractor* to the system."   *Id.* at 158 (emphases in original).   The circuit court specifically declined to address a circuit split as to whether P&A systems

themselves could invoke the doctrine.   *See id.* (emphases in original).

*Disability Advocates* is not binding in this case because the year after it was decided, DRNY became New York State's P&A system.    Thus, the case will present the Second Circuit with a clear opportunity to decide "which of our sister circuits has the better of the argument."   *Id*.

In the meantime, the defendants rely on *Disability Advocates* for another proposition.    They argue that leave to amend would be futile because DRNY's dismissal for lack of standing deprives the Court of subject-matter jurisdiction over the entire case.    Notwithstanding the presence of an individual plaintiff with standing, they cite the "longstanding and clear rule . . . that 'if jurisdiction is lacking at the commencement of [a] suit, it cannot be aided by the intervention of a [plaintiff] with a sufficient claim.'"   *Pressroom Unions-Printers League Income Sec. Fund v. Continental Assur. Co.*, 700 F.2d 889, 893 (2d Cir. 1983) (quoting, with alterations, *Pianta v. H.M. Reich Co.*, 77 F.2d 888, 890 (2d Cir. 1935)). *Disability Advocates* invoked the rule to hold that the belated "intervention of the United States was insufficient to cure that jurisdictional defect [i.e., DRNY's lack of standing]."   675 F.3d at 162 (2d Cir. 2012).

Although it may be longstanding and clear, the rule in *Pianta* is not as rigid as the defendants would have it.    In *Hackner v. Guaranty Trust Co.*, 117 F.2d 95 (2d Cir. 1941), the Second Circuit confronted a diversity case in which the original

9

plaintiffs did not meet the amount-in-controversy requirement then in effect.   A

proposed amendment sought to add a plaintiff who did.   In a decision authored by

Judge Charles Clark—"the chief architect of the Federal Rules of Civil Procedure,"

*Disability Advocates*, 675 F.3d at 161—the circuit court rejected the defendants'

claim that "one cannot amend a nonexistent action" as "purely formal" and

contrary to the "wide and flexible content given to the concept of action under the

[then] new rules":

> [N]o formidable obstacle to a continuance of the suit appears here,
> whether the matter is treated as one of amendment or of power of the
> court to add or substitute parties . . . or of commencement of a new
> action by filing a complaint with the clerk . . . . In any event we think
> this action can continue with respect to [the new plaintiff] without the
> delay and expense of a new suit, which at long last will merely bring
> the parties to the point where they now are.

117 F.2d at 98.   *Disability Advocates* acknowledged *Hackner* as having "found

favor in other courts," 675 F.3d at 161, but distinguished it on the ground that the

substitution had occurred promptly.   In *Disability Advocates*, by contrast, the

United States had not intervened until "*after the trial had concluded.*" *Id.*

(emphasis in original).   More recently, the Second Circuit has—albeit in a

different context—disavowed the view that "an action commenced in the name of

a plaintiff who lacks Article III standing is rendered an incurable nullity even

where a real party in interest both has standing and is willing to join the suit."

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 387 (2d Cir.

2021).

Like *Hackner*, this case demonstrates the perils of blind adherence to formalistic rules.   If the Court were to deny leave to amend, the four new plaintiffs could simply file a new lawsuit.   The defendants offer no reason why requiring those plaintiffs to do so is any more sensible than allowing them to join the existing lawsuit.   Certainly, it cannot be for the sake of avoiding dilatory litigation tactics.   Although the case has been pending for several years, it is still at the pleadings stage.   The motion to amend came promptly after Judge Mauskopf offered it as an alternative response to defendants' proposed motion for summary judgment on mootness and *before* she had adopted Magistrate Judge Bulsara's recommendation that DRNY be dismissed for lack of standing.   As in *Hacker*, requiring a new action would "merely bring the parties to the point where they now are."   117 F.2d at 98.

## B.   Futility: Non-Jurisdictional Arguments

The defendants' other futility arguments fare no better.   They argue that the individual plaintiffs (including, presumably, the proposed new individual plaintiffs) lack standing and fail to state a claim.   Those arguments were addressed in Magistrate Judge Bulsara's excellent and exhaustive R&R. Although Judge Mauskopf sensibly declined to review the R&R insofar as it dealt with Thomas's claims, its reasoning applies with equal force to the standing and

claims of the new individual plaintiffs.    Accordingly, for the reasons set forth in

the R&R, the Court concludes that the proposed third amended complaint alleges

plausible claims for relief and that the new individual plaintiffs have standing to

assert them.[1]   By the same token, the Court agrees with Magistrate Judge Bulsara

that the claims against New York State, Hochul and Baer are duplicative of the

claims against OPWDD.

The defendants further argue that amendment would be futile because the

complaint fails to allege a plausible basis for class certification.    Scholz's

previous motion to represent a class was, as noted, denied simply as an

administrative matter, "with leave to renew" after a ruling on the motion to amend.

Elec. Order (June 27, 2023).    Accordingly, the Court will resolve any arguments

against certifying a class in connection with the renewed motion.

## C.    Lack of Diligence and Prejudice

In addition to arguing futility, the defendants argue that leave to amend

should be denied due to plaintiffs' counsel's lack of diligence.    Since, as noted,

mere delay does not justify denying leave to amend, *see State Teachers Ret. Bd.*,

654 F.2d at 856, the defendants import the need for diligence from Rule 16's

statement that a scheduling order can be modified "only for good cause and with

---

[1]Magistrate Judge Bulsara concluded that Thomas lacked standing to
demand an injunction requiring discharge planning to begin at age 16.    Since the
plaintiffs no longer seek that specific injunctive relief, the issue is moot.

the judge's consent."   Fed. R. Civ. P. 16(b)(4).   The initial pretrial order set a

deadline of October 8, 2021, for amending the pleadings.

    Assuming the defendants are even correct that the rule rigidly limits a

court's ability to manage its own calendar, Judge Mauskopf appears to have made

the necessary finding of good cause in her June 27, 2023 order, which explicitly

suggested a third amended complaint as an alternative to defendants' proposed

motion for summary judgment.   To the extent she did not find good cause for

modifying the deadline for amended pleadings, the Court now finds that the

posture of the case—with motions practice still ongoing and no trial date set—

amply justifies an extension.

    For similar reasons, the Court rejects the defendants' argument that the

plaintiffs have thus far failed to cure the deficiencies in their complaint.   While,

as the defendants point out, plaintiffs' counsel knew from the outset that there

would have to be at least one plaintiff with standing, they argued in good faith that

DRNY could fulfill that role.   That argument was not authoritatively rejected until

Judge Mauskopf overruled their objections to the R&R.   And any delay in finding

an individual plaintiff with standing inheres in the nature of the system being

challenged—in which those attending residential schools long after they should

have aged out have coincidentally received non-school placements shortly after

becoming plaintiffs.   Whether or not the defendants are intentionally using those

placements to avoid litigating the merits of this case, *see Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (noting that claims of mootness based on a defendant's voluntary cessation of a challenged activity are "viewed with a critical eye" "because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed"), it is certainly not a problem of plaintiffs' counsel's own making.

Finally, the defendants argue that amendment would be "highly prejudicial" because it would require them to restart discovery and motions practice with four new plaintiffs. They fail to explain, however, how denying leave to amend would be any *more* prejudicial than their having to engage in precisely the same course of action if those plaintiffs filed a new lawsuit, as they surely would if the Court denied leave to amend.

## D.   Conclusion

In sum, the technical niceties of the "nullity doctrine" do not preclude the Court from exercising its discretion to decide whether judicial efficiency would be better served by allowing plaintiffs with standing to join an existing lawsuit or requiring them to file a new one. The considerations that govern that discretion weigh in favor of leave to amend. In a normal case, the Court would no doubt grant such leave.

But this is not a normal case. DRNY's status as an entity empowered by

14

federal and state law to advocate on behalf of individuals who conceivably lack the ability to advance their own interests presents a unique twist on the usual standing inquiry.    A quick answer to that inquiry from a higher authority is very likely in the best interests of all involved.    Yet allowing new plaintiffs to enter the case delays the entry of an appealable final judgment.    And if the procedural history of this case is any guide, the delay is likely to be protracted by more non-school placements for any new plaintiffs.    As plaintiffs' counsel pointed out at oral argument, the Court could certify this memorandum and order as a partial final judgment under Rule 54(b) or an immediately appealable interlocutory order pursuant to 28 U.S.C. § 1292(b).    But as the parties' premotion letters demonstrate, such a decision would require another round of cost-intensive and time-consuming briefing in this already protracted case.

The Court was strongly inclined to deny leave to amend to secure an appealable judgment as quickly as possible.    But a final consideration has proven dispositive.    A Southern District case presents the same issue regarding DRNY's standing.    On February 20, 2024, Judge Vyskocil of that court dismissed the case, finding that DRNY lacked standing (for essentially the same reasons articulated by Magistrate Judge Bulsara and Judge Mauskopf in this case) and denying a motion to add individual plaintiffs in an attempt to "resuscitate this case via intervention." *T.C. v. New York State Dep't of Health*, Case. No. 22-CV-5045, 2024 WL 689503,

at *6 (S.D.N.Y. Feb. 20, 2024).   At oral argument, the parties informed the Court

that DRNY appealed; the case has been fully briefed and is scheduled to be argued

in the Second Circuit on October 18, 2024.

   Realistically, then, the Second Circuit will resolve the issue of DRNY's

standing before an appeal could be perfected in this case.   Should the circuit court

rule in DRNY's favor, it could easily rejoin the case.   In the meantime, the

individual plaintiffs can pursue the claims in the proposed third amended

complaint.   The defendants will be no worse off than if those plaintiffs filed a

new lawsuit, while all parties will avoid the burdens of starting over from scratch.

### III

For the foregoing reasons, the motion for leave to file a third amended

complaint is granted.   Plaintiffs' counsel shall revise the complaint to omit New

York State, Hochul and Baer as defendants, and file it forthwith.   OPWDD shall

file an answer within 20 days thereafter.   Magistrate Judge Henry will supervise

whatever additional discovery is needed with regard to the new plaintiffs.   Given

the case's history, the Court asks that such discovery be handled on an expedited

basis.

Finally, the Court's disposition revives the motion for class certification.

Following the completion of discovery, the parties shall advise the Court when the

motion is meet for disposition.   If supplemental briefing is required, they shall

advise the Court of their agreed-upon briefing schedule.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 13, 2024

17